**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DEBRA MILLS and JAMES MILLS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 05-888-GPM** |
| | ) | |
| **MARTIN & BAYLEY, INC., d/b/a Huck's** | ) | |
| **Convenience Store, BROWN &** | ) | |
| **W I L L I A M S O N   T O B A C C O** | ) | |
| **CORPORATION, and R.J. REYNOLDS** | ) | |
| **TOBACCO COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, Chief District Judge:**

This matter is before the Court on the motion for remand to state court brought by Plaintiffs Debra Mills and James Mills (Doc. 12).  The stay entered in this case on March 29, 2006, is **LIFTED**.  The motion for remand is **GRANTED** and this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, pursuant to 28 U.S.C. § 1447(c).

### INTRODUCTION

Plaintiffs filed this action originally in the Madison County circuit court against Defendants Martin & Bayley, Inc., doing business as Huck's Convenience Store ("Huck's"), Brown & Williamson Tobacco Corporation ("B & W"), and R.J. Reynolds Tobacco Company ("R.J.R.") on November 12, 2004.  In their initial complaint Plaintiffs alleged that Debra Mills smoked Kool Lights cigarettes manufactured by B & W and Doral Lights Menthol cigarettes manufactured by R.J.R. over a period of approximately twenty-four years and that, as a consequence, she developed

lung cancer.  Plaintiffs alleged that Debra Mills was induced to smoke the cigarettes through representations that they were "light" and contained less tar and nicotine than regular "full flavor" cigarettes, when in fact the cigarettes delivered higher levels of tar and nicotine to the user than did full flavor cigarettes.  Huck's was alleged to have distributed the cigarettes.  Plaintiffs asserted claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-505/12, breach of warranty, strict products liability, negligence, and loss of consortium. On December 8, 2004, Plaintiffs voluntarily dismissed B & W and R.J.R. from the action without prejudice.  On December 7, 2005, Plaintiffs filed an amended complaint substantially identical to their initial complaint again naming B & W and R.J.R. as Defendants.

On December 19, 2005, B & W and R.J.R. removed the case from state court to this Court, asserting federal subject matter jurisdiction on the basis of 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1442.  On January 18, 2006, Plaintiffs moved for remand of the case to state court. On February 17, 2006, B & W and R.J.R. filed a response to the motion for remand.  On March 29, 2006, the Court entered an agreed stay of proceedings pending resolution by the United States Court of Appeals for the Seventh Circuit of an interlocutory appeal from an order denying remand in *Kelly v. Martin & Bayley, Inc.*, Civil No. 05-409-DRH (S.D. Ill. filed June 9, 2005).  The Seventh Circuit Court of Appeals now has rendered its decision in the *Kelly* appeal. *See Kelly v. Martin & Bayley, Inc.*, No. 06-1756, 2007 WL 2710816 (7th Cir. Sept. 19, 2007).  Accordingly, the Court sua sponte lifts the stay of these proceedings.  As noted, Plaintiffs' motion for remand has been fully briefed, and, having reviewed carefully the submissions of the parties regarding remand, the Court rules as follows.

## DISCUSSION

### A.      Legal Standard

A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction.  *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006).  Federal removal jurisdiction is statutory in nature and is to be strictly construed.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007).  Removal is proper if it is based on permissible statutory grounds and if it is timely.  *See Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004); *Davis v. Rodriguez*, No. 95 C 4584, 1995 WL 758333, at *2 (N.D. Ill. Dec. 19, 1995).  Doubts concerning removal must be resolved in favor of remand to the state court.  *See Clevenger v. Eastman Chem. Co.*, No. 07-cv-148-DRH, 2007 WL 2458474, at *1 (S.D. Ill. Aug. 24, 2007); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000).

### B.      Diversity Jurisdiction

A federal court may exercise jurisdiction over a case removed from state court in federal diversity jurisdiction only if all of the parties to an action are of completely diverse citizenship, that is, no plaintiff is a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, is in controversy.  *See* 28 U.S.C. § 1332(a); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); *F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir. 1989); *Johns v. Johns Mitchell*, No. 06-924-GPM, 2007 WL 496391, at *2 (S.D. Ill. Feb. 13, 2007); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 833 (S.D. Ill. 2006).  In this case, although

it appears from the record that an amount in excess of $75,000, exclusive of interest and costs, is in controversy, complete diversity of citizenship does not exist.  Plaintiffs are citizens of Illinois, as is Huck's; B & W and R.J.R. are, respectively, citizens of Delaware and North Carolina.  *See* 28 U.S.C. § 1332(c)(1).

B & W and R.J.R. contend that complete diversity of citizenship exists in this case because Huck's has been fraudulently joined to defeat diversity jurisdiction.  In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined.  *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994); *Smith v. Shipping Utils., Inc.*, No. Civ. 05-500-GPM, 2005 WL 3133494, at *1 (S.D. Ill. Nov. 23, 2005).  A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts."  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  *See also Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *2 (S.D. Ill. June 6, 2006); *Katonah v. USAir, Inc.*, 868 F. Supp. 1031, 1034 (N.D. Ill. 1994).  A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).  *See also Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at *2 (S.D. Ill. Apr. 25, 2006); *Durham v. Shiley Inc*., No. 91 C 7999, 1994 WL 583351, at **2-3 (N.D. Ill. Oct. 21, 1994).

Before reaching any issues of fraudulent joinder, the Court must evaluate the timeliness of

the removal of this case under 28 U.S.C. § 1446, which provides, in pertinent part,

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action*.

28 U.S.C. § 1446(b) (emphasis added).  When an action is "commenced" for purposes of the removal statutes is determined, of course, by the law of the state where a removed action originally was filed.  *See Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750-51 (7th Cir. 2005) (citing *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)); *Riehl v. National Mut. Ins. Co.*, 374 F.2d 739, 741-42 (7th Cir. 1967).  *Accord Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir. 1989).  Under the law of Illinois, where this action initially was filed, "[e]very action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint."  735 ILCS 5/2-201(a).  *See also Del Raine v. Carlson*, 826 F.2d 698, 707 (7th Cir. 1987) (citing *Lawrence v. Williamson Ford, Inc.*, 300 N.E.2d 636, 640 (Ill. App. Ct. 1973)) (under Illinois law, "suit is commenced by filing the complaint[.]").  Accordingly, this action was commenced for purposes of Section 1446(b) on November 12, 2004, when, as noted, it was filed originally in the Madison County circuit court.  Thus, the removal of this action on December 19, 2005, occurred outside the one-year deadline for removal in diversity set out in the statute.

B & W and R.J.R. contend that the one-year deadline on removal in diversity does not apply

in this instance because Huck's has been fraudulently joined to defeat diversity.  The Court does not

agree.  The statutory language of 28 U.S.C. § 1446(b) clearly prohibits any removal of an action in

diversity more than one year after it was commenced in state court.  The legislative history

underlying the one-year limitation on removal in diversity emphasizes that the purpose of the

limitation is to prevent the disruption and waste of judicial resources entailed in removal of actions

in diversity over one year after their commencement:

> Subsection (b)(2) amends 28 U.S.C. § 1446(b) to establish a one-year limit on
> removal based on diversity jurisdiction as a means of reducing the opportunity for
> removal after substantial progress has been made in state court.  The result is a
> modest curtailment in access to diversity jurisdiction . . . . Removal late in the
> proceedings may result in substantial delay and disruption.

H.R. Rep. No. 100-889, at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032-33.  *See also*

*Rothner v. City of Chicago*, 879 F.2d 1402, 1418 (7th Cir. 1989) ("It appears that Congress is fully

aware that substantive proceedings may take place in state court prior to removal and yet has not

[before the enactment of the one-year deadline on removal in diversity in 1988] directed courts to

remand for that reason.  Rather, in keeping with its desire to make the time for removal uniform and

certain, it has [through the 1988 enactment of the one-year deadline] placed a specific limit on the

removal period in diversity cases.") (emphasis omitted).

Significantly, the commentary to 28 U.S.C. § 1446 acknowledges that the one-year deadline

on removal in diversity may result in inequities to removing defendants.  Specifically, the

commentary states that the deadline

> may sometimes give too much control to the state court plaintiff who wants to resist
> a removal to the federal court at all costs.  It can invite tactical chicanery.
> A plaintiff with the motive of defeating removal, for example, may be able to join
> as a defendant, in a case in which there is genuine diversity between the plaintiff and
> the other defendants, someone of nondiverse citizenship whom the plaintiff does not
> really intend to sue but who is arguably liable on the claim and hence properly joined

under state law.  The plaintiff can then just wait a year and drop that party, polishing the action to just the point desired and at the same time dissolving the threat of federal jurisdiction.

The one-year cutoff therefore has an anti-diversity ring to it.  Congress acknowledged this, but called it a "modest curtailment".

David D. Siegel, *Commentary on 1988 Revision of Section 1446*, *reprinted at* 28 U.S.C. § 1446 (1994).  Just as the statute itself contains no exception to the one-year deadline on removal in diversity for cases involving fraudulent joinder, so the commentary to the statute strongly suggests that fraudulent joinder is not an exception to the deadline.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 543 (1939) (Black, J., concurring) (quoting *Chicago, Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913)) (noting that the test of fraudulent joinder is whether "there [is] a real intention to get a . . . judgment" against a diversity-defeating defendant).  *See also Russaw v. Voyager Life Ins. Co.*, 921 F. Supp. 723, 724-26 (M.D. Ala. 1996) (refusing to create an exception to the one-year limit on removal, even when the plaintiff fraudulently joined a defendant in the lawsuit in order to destroy diversity of citizenship:  the statute contains no exceptions, and Congress enacted the statute in order to avoid the disruption of a state-court suit after substantial progress had been made).

The Court concludes that the one-year deadline set out in 28 U.S.C. § 1446(b) bars removal of this case in diversity jurisdiction.  The statutory language is clear and, of course, it is "the . . . task . . . of a court . . . to apply the text . . . of a statute . . . , not to improve upon it." *Dudley v. Putnam Inv. Funds*, 472 F. Supp. 2d 1102, 1111 n.6 (S.D. Ill. 2007) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126 (1989)).  *See also Perhats Assocs. v. Fasco Indus., Inc.*, 843 F. Supp. 424, 426 (N.D. Ill. 1994) (noting with respect to the one-year deadline on removal in diversity that "the statutory language is crystal-clear, and federal judges do

not sit as superlegislators to amend or repeal the work of Congress.").  As discussed, the Court is required to construe the removal statutes strictly against removal and, to the extent the Court is concerned with the equities of removal, those equities are to be weighed with an eye to remand. "[T]he Court has not been empowered by Congress 'to fashion equitable removal solutions to procedural complexities' in order to smooth a defendant's path to federal court via removal." *Dudley*, 472 F. Supp. 2d at 1111 n.6 (quoting *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 852 (S.D. Ill. 2006)).  Moreover, particularly where the exercise of federal subject matter jurisdiction on removal is concerned, "[c]ourts and litigants are best served by [a] bright-line rule." *Sabo v. Dennis Techs., LLC*, No. 07-cv-283-DRH, 2007 WL 1958591, at *8 (S.D. Ill. July 2, 2007) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988)).

In light of all of the foregoing considerations, the Court concludes that the removal of this action is untimely under 28 U.S.C. § 1446(b).  The Seventh Circuit Court of Appeals has not had occasion to address the issue of whether the one-year deadline on removal in diversity is jurisdictional or procedural, although at least one sister court in this Circuit has held that it is the former. *See Foiles v. Merrell Nat'l Labs.*, *Div. of Richardson-Merrell, Inc.*, 730 F. Supp. 108, 110 (N.D. Ill. 1989).  Even if the one-year deadline is merely procedural, then upon a timely objection to removal by Plaintiffs the Court is required to treat the deadline as mandatory and to be strictly applied, and to demand strict compliance with the deadline by the removing Defendants. *See Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009, 1015 (S.D. Ill. 2007); *Fields v. Jay Henges Enters., Inc.*, Civil No. 06-323-GPM, 2006 WL 1875457, at *2 (S.D. Ill. June 30, 2006). In this instance Plaintiffs have raised a timely objection to removal on the basis of the one-year deadline under Section 1446(b), *see* 28 U.S.C. § 1447(c), and accordingly the Court cannot exercise

jurisdiction over this case in diversity.[1]

### C. Federal Officer Jurisdiction

B & W and R.J.R., as noted, also have removed this case pursuant to 28 U.S.C. § 1442, which authorizes a defendant to remove "[a] civil action . . . commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). To effect removal as persons acting under a federal officer, B & W and R.J.R. must prove three elements: (1) they are "persons" within the meaning of the statute; (2) they acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Plaintiffs' claims and the acts B & W and R.J.R. performed under the direction of a federal officer; and (3) B & W and R.J.R. have a colorable federal defense

---

1.     The Court notes that, while it is not necessary to reach the merits of the arguments raised by B & W and R.J.R. with respect to the alleged fraudulent joinder of Huck's to defeat diversity jurisdiction, the Court does not find those arguments meritorious. The gist of the arguments is that Plaintiffs' claims are inadequately pleaded, that the claims are preempted by federal law, specifically the Federal Cigarette Labeling and Advertising Act and regulations promulgated by the Federal Trade Commission ("FTC") with respect to the tobacco industry, that the claims are within the primary jurisdiction of the FTC, and that Huck's is not a proper party to this action pursuant to 735 ILCS 5/2-621(a)-(c), the Illinois "innocent seller" statute. With respect to pleading, it is the removing Defendants' burden to prove fraudulent joinder, and that burden is not met by pointing to supposed defects in Plaintiffs' pleading of their claims. *See McNichols v. Johnson & Johnson*, 461 F. Supp. 2d 736, 739 (S.D. Ill. 2006). As to issues of preemption and primary jurisdiction, these are matters that go to the merits of Plaintiffs' claims and not to jurisdiction. *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574-75 (5th Cir. 2004) (declining to find fraudulent joinder on the basis of a defense of preemption of state law by federal law that was applicable to all of the defendants in a case, both diverse and non-diverse); *Collins v. American Home Prods. Corp.*, 343 F.3d 765, 768-69 (5th Cir. 2003) (same). Finally, with respect to the matter of the innocent seller statute, which shields Huck's only from Plaintiffs' strict liability claims, *see Yount v. Shashek*, 472 F. Supp. 2d 1055, 1066 (S.D. Ill. 2006), the Court has held in the past that, because a dismissal of a non-manufacturing defendant under the statute is merely provisional, it is not an appropriate basis upon which to find fraudulent joinder. *See LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1050-53 (S.D. Ill. 2006).

to state-law liability.  *See Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 844 (S.D. Ill. 2006).

"[T]he proponent of removal . . . has the burden of proving all of the requisite elements for federal

officer jurisdiction, and a failure to prove any one of the elements requires remand." *Id*. at 845.  The

basic purpose of Section 1442 is to ensure a federal forum for defenses of official immunity by

federal officers.  *See id*. at 843 (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

Because federal officer removal "is rooted in 'an anachronistic mistrust of state courts' ability to

protect and enforce federal interests and immunities from suit,'" although federal officer jurisdiction

"is read 'expansively' in suits involving federal officials, it is read narrowly where, as in this

instance, only the liability of a private company purportedly acting at the direction of a federal

officer is at issue." *Id*. at 843, 852 (quoting *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245

F. Supp. 2d 1144, 1150, 1152 & n.6 (D. Colo. 2002)) (emphasis omitted).  *See also Hilbert v.*

*Aeroquip, Inc.*, 486 F. Supp. 2d 135, 143 (D. Mass. 2007).[2]

The Court concludes in light of recent decisions of the Supreme Court of the United States

---

2.   It perhaps is worth noting that 28 U.S.C. § 1442 is not an independent grant of subject matter jurisdiction to the federal courts.  Although Section 1442 "grant[s] district court jurisdiction over cases in which a federal officer is a defendant," it does not, however, "independently support [federal subject matter] jurisdiction." *Mesa v. California*, 489 U.S. 121, 136 (1989).  Instead, the basis for jurisdiction in cases removed under Section 1442 is 28 U.S.C. § 1331, which grants federal courts jurisdiction over cases arising under federal law.  *See Mesa*, 489 U.S. at 136.  This is why, in addition to being a federal officer or a person acting under the direction of such an officer, a defendant seeking removal under Section 1442 must aver a "colorable federal defense" to support removal.  *See id*. at 129.  *See also Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Willingham*, 395 U.S. at 406-07.  "Removal under 28 U.S.C. § 1442 represents an exception to the general rule that removal of an action based on an issue of federal law is governed by the claims asserted in a plaintiff's well-pleaded complaint . . . .  This is because federal officer removal . . . operates on the basis of issues generally thought to be defensive in character rather than on the content of the plaintiff's claim." *Alsup*, 435 F. Supp. 2d at 843-44.  "A defendant who is able to meet the requirements for removal under section 1442 'gain[s] access to federal court [even] where no federal question is presented by the plaintiff.'" *Id*. at 844 (quoting *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992)).

and the Seventh Circuit Court of Appeals that B & W and R.J.R. cannot show that they were acting under the direction of a federal officer within the meaning of 28 U.S.C. § 1442.  B & W and R.J.R. contend that they were acting under the direction of a federal officer because the tobacco industry is subject to extensive regulation by the FTC.  However, in *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301 (2007), the United States Supreme Court held unanimously that the fact that a federal agency directs, supervises, and monitors the activities of a private business does not permit the business to remove a case under Section 1442.  Specifically, the *Watson* Court held that a cigarette manufacturer could not use the statute to remove a state-court suit alleging that it violated a state consumer fraud statute by advertising cigarettes as "light" when in fact the manufacturer had manipulated testing so that the cigarettes registered artificially-low levels of tar and nicotine.  In so holding, the *Watson* Court examined the meaning of the term "acting under" as employed in Section 1442.  The Court reasoned that the term necessarily refers to a private entity's effort to assist a federal agency or officer in performing official duties.  "In this context, the word 'under' must refer to what has been described as a relationship that involves . . . acting in a certain capacity, considered in relation to one holding a superior position or office . . . . That relationship typically involves . . . subjection, guidance, or control."  127 S. Ct. at 2307.  "In addition, precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Id.* (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)) (emphasis omitted).

Correspondingly, the *Watson* Court held, simply complying with federal laws, rules, or regulations does not constitute acting under a federal officer for purposes of 28 U.S.C. § 1442.  "In our view, the help or assistance necessary to bring a private person within the scope of the statute

does not include simply complying with the law.  We recognize that sometimes an English speaker might say that one who complies with the law 'helps' or 'assists' governmental law enforcement." 127 S. Ct. at 2307 (emphasis omitted).  "Taxpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all 'help' or 'assist' federal law enforcement authorities in some sense of those words. But that is not the sense of 'help' or 'assist' that can bring a private action within the scope of this statute."  *Id*.  "That is in part a matter of language.  One would usually describe the behavior of the taxpayers, airline passengers, and prisoners we have described as compliance with the law (or acquiescence to an order), not as 'acting under' a federal official who is giving an order or enforcing the law."  *Id*. (emphasis omitted).  The Court found support for its holding in statutory purpose:

> When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court . . . prejudice . . . . Nor is a state-court lawsuit brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law . . . . Nor is such a lawsuit likely to deny a federal forum to an individual entitled to assert a federal claim of immunity.

*Id*. at 2307-08 (citing *Willingham*, 395 U.S. at 407).  As *Watson* makes clear, simple compliance with federal regulations, however comprehensive or detailed, is not sufficient to satisfy the acting under requirement for removal pursuant to Section 1442.

Importantly, the *Watson* Court rejected the defendant's argument that FTC regulation of the cigarette industry is comparable to the detailed regulation, monitoring, or supervision of government contractors that is sufficient to find that a government contractor is acting under a government agency or officer.  The difference, the Court explained, is that government contractors assist the government in ways that go beyond simple compliance with the law.   "[T]he private contractor in such cases is helping the Government to produce an item that it needs.  The assistance that private

contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks."   127 S. Ct. at 2308.   A contractor furnishing military supplies, for example, "fulfill[s] the terms of a contractual agreement by providing the Government with a product that it use[s] to help conduct a war.   Moreover, at least arguably, [the contractor] perform[s] a job that, in the absence of a contract with a private firm, the Government itself would have . . . to perform."   *Id*.   The Court rejected also the defendant's contention that testing cigarettes for tar and nicotine involves more than mere compliance with government regulations, rules, and orders because the FTC has delegated cigarette-testing responsibility to an industry association.   The Court found no evidence that the FTC had delegated any legal authority to the industry association to test cigarettes on the government's behalf.   "Without evidence of some such special relationship, [the defendant's] analogy to Government contracting breaks down.   We are left with the FTC's detailed rules about advertising, specifications for testing, requirements about reporting results, and the like.   This sounds to us like regulation, not delegation."   *Id*. at 2310.   "[T]hough we find considerable regulatory detail and supervision, we can find nothing that warrants treating the . . . relationship [between the FTC and the defendant] as distinct from the usual regulator/regulated relationship.   This relationship, as we have explained, cannot be construed as bringing [the defendant] within the terms of the statute."   *Id*.   Accordingly, the *Watson* Court held that the defendant was not acting under a federal officer.

In *Kelly* the Seventh Circuit Court of Appeals confronted arguments for federal officer removal substantially identical to those raised both in *Watson* and in this case, namely, that a cigarette manufacturer, in testing its products for tar and nicotine under detailed FTC regulations, was acting under a federal officer for purposes of 28 U.S.C. § 1442.   The Seventh Circuit rejected

this position, stating:

> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

*Kelly*, 2007 WL 2710816, at *4 (quoting *Watson*, 127 S. Ct. at 2308). *See also Alsup*, 435 F. Supp. 2d at 852 (quoting *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 428 F. Supp. 2d 1014, 1018 (D. Minn. 2006)) (noting that Section 1442 "should not be read to 'allow for federal jurisdiction over virtually any participant in a regulated industry,' thus creating 'an unprecedented expansion of federal jurisdiction.'"); *Freiberg*, 245 F. Supp. 2d at 1150 ("[P]rivate actors seeking to benefit from [Section 1442] bear a special burden of establishing the official nature of their activities."); *Brown & Williamson Tobacco Corp. v. Wigand*, 913 F. Supp. 530, 533-34 (W.D. Ky. 1996) ("[T]he statute's purpose is to protect . . . federal officials [by providing them] with an unbiased federal forum," and this purpose is not implicated when a private defendant "is not implementing any federal policy at the direction of federal officers or agents."); *Bakalis v. Crossland Sav. Bank*, 781 F. Supp. 140, 145 (E.D.N.Y. 1991) (observing that "[g]overnment employees are the primary protected class of [Section 1442]," not "a corporation regulated by the government"). In light of *Watson* and *Kelly*, the Court concludes that B & W and R.J.R. are not entitled to remove as persons acting under a federal officer.

## CONCLUSION

The stay entered in this case on March 29, 2006, is **LIFTED**. Plaintiffs' motion for remand

(Doc. 12) is **GRANTED**.  Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the

Circuit Court of the Third Judicial Circuit, Madison County, Illinois.

**IT IS SO ORDERED.**

DATED:  09/21/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
Chief United States District Judge